Case No. 2:25-cv-06676 (BRM)

# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>20230930-DK-BUTTERFLY-1, INC., f/k/a BED BATH & BEYOND INC., *et al.*,<br><br><div align="right">Debtors.</div> | Bankr. Case No. 23-13359 (VFP)<br><br>Adv. Pro. No. 24-01443 (VFP)<br><br>Case No. 2:25-cv-06676 (BRM) |
| MICHAEL GOLDBERG, as Plan Administrator for 20230930-DK-BUTTERFLY-1, INC., f/k/a Bed Bath & Beyond Inc.,<br><br><div align="center">Plaintiff/Appellant,</div><br><div align="center">v.</div><br>NEW JERSEY ECONOMIC DEVELOPMENT AUTHORITY,<br><br><div align="center">Defendant/Appellee.</div> | |

---

## RESPONSE BRIEF OF DEFENDANT-APPELLEE

---

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Jeffrey Bernstein, Esq.
Eliott Berman, Esq. (admitted *pro hac vice*)
570 Broad Street, Suite 1401
Newark, NJ 07102
Telephone: (973) 565-2183
E-mail: jbernstein@mdmc-law.com
        eberman@mdmc-law.com
*Counsel to Defendant/Appellee NJEDA*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

STATEMENT OF CASE ....................................................................................3

    1.    FACTUAL BACKGROUND...............................................................3

    2.    PROCEDURAL HISTORY ...............................................................16

SUMMARY OF ARGUMENT...............................................................20

ARGUMENT ....................................................................................................23

I.     THE NEW JERSEY CONTRACTUAL LIABILITY ACT BARS
      PLAINTIFF'S CLAIMS...................................................................24

   A. The NJCLA'S Requirements Are Applicable To Plaintiff's Claims. ...........24

   B. Plaintiff and BB&B Failed to Provide Written Notice to NJEDA as Required
      by the NJCLA. ...............................................................................28

   C. Plaintiff Failed to Provide Any Notice Within Three Months of the Accrual
      of BB&B's Claims as Required by the NJCLA...........................................33

II.    UNDER THE TERMS OF THE GRANT AGREEMENTS, DUE TO
      BB&B'S FAILURE TO MAINTAIN SUFFICIENT JOBS IN 2021 AND
      2022, NJEDA MAY WITHHOLD PAYMENT OR TAX CREDITS THAT
      WERE NOT YET PAID OR ISSUED...........................................................36

   A. NJEDA's Alleged Breach Of The Grant Agreements Before 2021 Has No
      Effect On The Fact That The Grant Agreements Expressly State That A
      Condition of BB&B Receiving and Retaining Any Payment Is That No
      Events of Default Have Occurred and Remain Uncured and that NJEDA
      May Withhold Payment Of All Grant Payments Not Yet Paid At The Time
      Of Default During Such Time As An Event Or Events Of Default Remain
      Uncured...........................................................................................36

   B. Plaintiff's Argument That NJEDA Cannot Terminate the Grant Agreements
      Because It Purportedly Failed To First Provide A Notice Of Default Is Both
      Irrelevant and Without Merit. ...........................................................39

i

1.  The August 7, 2023 Letters Constitute Notice of Default...................40

2.  Due to the Incurable Nature of BB&B's Default, NJEDA Was Not
    Obligated to Provide a Notice of Default...........................................42

CONCLUSION........................................................................................................46

ii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.D.L. v. Cinnaminson Twp. Bd. of Educ.*,
   975 F. Supp.2d 459 (D.N.J. 2013) ......................................................................25

*Borough of Princeton v. Board of Chosen Freeholders of Cnty. of Mercer*, 333 N.J. Super. 310 (App. Div. 2000) ...................................................45

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) .............................................................................23

*C.L. v. Div. of Medical Assistance & Health Services*,
   473 N.J. Super. 591 (App. Div. 2022) ................................................................25

*CBA Env't Servs. v. Toll Bros.*,
   403 F. Supp.3d 403 (D.N.J. 2019) ......................................................................23

*Chubb Custom Ins. v. Prudential Ins.*,
   195 N.J. 231 (2008) ............................................................................................40

*City of Trenton v. Cannon Cochran Mgmt. Servs., Inc.*,
   No. A-5576-09T1, 2022 WL 3241579 (N.J. Super. Ct. App. Div.
   Aug. 1, 2011) ......................................................................................................37

*County of Hudson v. Dep't of Corrections*,
   No. A-3511-05T2, 2007 N.J. Super. Unpub. LEXIS 913 (App.
   Div. June 28, 2007).............................................................................................34

*County of Hudson v. State, Dep't of Corrections*,
   208 N.J. 1 (2011) ..........................................................................................30, 31

*Cumberland Cnty. Improvement Auth. v. GSP Recycling Co.*,
   358 N.J. Super. 484 (App. Div. 2003)..........................................................25, 27

*D.D. v. University of Med. and Dentistry of NJ*,
   213 N.J. 130 (2013) ......................................................................................31, 32

iii

*Dixon v. JPay, Inc.*,
   No. A-4498-19, 2022 N.J. Super. Unpub. LEXIS 806 (App. Div.
   May 13, 2022) ............................................................................................32, 33

*Hardy ex. rel. Dowdell v. Abdul-Matin*,
   198 N.J. 95 (2009) ......................................................................................27, 45

*East Empire Constr. Inc. v. Borough Constr. Grp. LLC*,
   156 N.Y.S.3d 148 (App. Div. 2021).................................................................44

*Federico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ...........................................................................46

*Foman v. Davis*,
   371 U.S. 178 (1962).........................................................................................23

*Harry's Village, Inc. v. Egg Harbor Twp.*,
   89 N.J. 576 (1982) ...........................................................................................41

*JPC Merger Sub LLC v. Tricon Enters., Inc.*,
   474 N.J. Super. 145 (App. Div. 2022)..............................................................26

*LJL Transp., Inc. v. Pilot Air Freight Corp.*,
   599 Pa. 546 (2009)...........................................................................................44

*Porreca v. City of Millville*,
   419 N.J. Super. 212 (App. Div. 2011)..............................................................25

*Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v.*
   *Lowenstein Sandler*,
   365 N.J. Super. 241 (App. Div. 2003)..............................................................25

*S&R Corp. v. Jiffy Lube Int'l, Inc.*,
   968 F.2d 371 (3d Cir. 1992) ............................................................................38

*Sea Tow Servs. Int'l v. Pontin*,
   607 F. Supp.2d 378 (E.D.N.Y. 2009) ..............................................................44

*Stony Brook Constr. Co. v. Coll. of N.J.*,
   No. A-1941-06T1, 2008 N.J Super. Unpub. LEXIS 799 (App. Div.
   June 16, 2008)..................................................................................................26

iv

*Twin Crest Grp. v. Del. Valley Urology, LLC*,
 No. 10-6350, 2013 U.S. Dist. LEXIS 175036 (D.N.J. Dec. 12,
 2013) ............................................................................................................43, 44

*Vegas United Inv. Series 105, Inc. v. Celtic Bank Corp.*,
 135 Nev. 456 (2019) ..........................................................................................25

*Velez v. City of Jersey City*,
 358 N.J. Super. 224 (App. Div. 2003) ...............................................................32

*Weisman v. New Jersey Dep't of Hum. Servs.*,
 982 F. Supp.2d 386 (D.N.J. 2013), *aff'd*, 593 F. App'x 147 (3d Cir.
 2014) ..................................................................................................................38

*Young Travelers Day Camps, Inc. v. Felsen*,
 118 N.J. Super. 304 (D. Ct. 1972) .........................................................42, 43, 44

## Statutes

N.J.S.A. §59:8-5.....................................................................................................31

N.J.S.A. §59:13-1 *et seq.*...............................................................................*passim*

## Other Authorities

Restatement (Second) of Contracts §237 (1981).....................................................38

v

## INTRODUCTION

Nothing in the Initial Brief of Plaintiff-Appellant, Michael Goldberg ("Appellant" or "Plaintiff"), as Plan Administrator for 20230930-DK-BUTTERFLY-1, Inc., f/k/a Bed Bath & Beyond, Inc. ("BB&B"), casts any doubt on the Bankruptcy Court's determination to deny Plaintiff's motion for leave to file an amended complaint on futility grounds.

After exhaustive consideration of the record and extensive argument, the Bankruptcy Court granted the motion of Defendant-Appellee, New Jersey Economic Development Authority ("NJEDA") for judgment on the pleadings with respect to Plaintiff's initial complaint (the "Initial Complaint").  But when Plaintiff asked (for the very first time) at oral argument of the motion for judgment on the pleadings for an opportunity to replead, the Bankruptcy Court permitted Plaintiff to move for leave to file an amended complaint with a supporting memorandum setting forth Plaintiff's position why the Bankruptcy Court should permit the filing of the amended complaint.

Plaintiff then made a motion for leave to file an amended complaint.  After further exhaustive consideration of the record and extensive argument, the Bankruptcy Court denied Plaintiff's motion with prejudice on futility grounds and dismissed Plaintiff's adversary proceeding against NJEDA with prejudice.

1

The Bankruptcy Court's determination should be upheld by this Court for multiple independent reasons, including the following:

1.      Under the New Jersey Contractual Liability Act ("NJCLA"), the provisions of which are explicitly incorporated by reference in the parties' grant agreements (the "Grant Agreements"), the claims in the proposed amended complaint (the "Proposed Amended Complaint") are defective as a matter of law because, as admitted by Plaintiff, "the BEIP Debtors did not provide written notice to the NJEDA within 90 days of the accrual of their claims." Appellant's Br. at 16. While substantial compliance with the provisions of the NJCLA are sufficient, case law is crystal clear that written notice is required before suit may be brought.

2.      Plaintiff admits that BB&B did not maintain in both 2021 and 2022 the minimum number of jobs required by the Grant Agreements, but Plaintiff claims that NJEDA breached its obligations by failing to issue tax credits prior to BB&B's defaults under the Grant Agreements, which, according to Plaintiff "were owed long before the year 2021" and "were overdue to be paid." Appellant's Br. at 32. Thus, even assuming *arguendo* that NJEDA breached its obligations under the Grant Agreements by not issuing tax credits to BB&B prior to BB&B's defaults thereunder, any action to recover such tax credits is barred by the NJCLA for the *additional* reason that BB&B (and Plaintiff) did not provide *any* notice (even oral notice) within three months of the accrual of such claims, as required by the NJCLA.

2

The alleged (oral) notices Plaintiff asserts he or BB&B (or their representatives) provided in 2023 and 2024 before the filing of this action occurred *years after* the accrual of Plaintiff's claims for amounts purportedly "owed long before the year 2021," way past the NJCLA's three-month deadline.

3.      Plaintiff's claims are also barred by numerous express provisions of the Grant Agreements, which provide that NJEDA is under no duty to make payments or issue tax credits *and may withhold* all payments and tax credits to BB&B if BB&B fails to employ the minimum number of people required under the Grant Agreements.  Plaintiff does not and cannot contest that BB&B did not employ the minimum number of people required under the Grant Agreements in 2021 and 2022. Accordingly, NJEDA is under no obligation to now pay or issue any tax credits to Plaintiff, and, pursuant to the explicit terms of the Grant Agreements, NJEDA may withhold any payments or tax credits not previously issued.

## STATEMENT OF CASE

## 1.      FACTUAL BACKGROUND

On or about December 4, 2006, NJEDA entered into two grant agreements, one with Christmas Trees Shops, Inc. ("CTS") (the "P17285 Grant Agreement") and one with BB&B (the "P17286 Grant Agreement").  The P17286 Grant Agreement

3

and the P17285 Grant Agreement are attached as Exhibits A and B to the Proposed

Amended Complaint (Adv.Doc. 41-1).[1]

On July 25, 2011, NJEDA entered into another grant agreement with the

following entities: (i) BB&B, (ii) Bed Bath & Beyond of California Limited Liability

Company, (iii) Bed Bath & Beyond Procurement Co., (iv) BBB Value Services Inc.,

---

[1]   Citations to the Record are to the documents filed in the adversary proceeding in the Bankruptcy Court, which (unless noted otherwise) are also contained in Appellant's Appendix filed in this Court.

As documented in NJEDA's motion for judgment on the pleadings (Adv.Doc. 22-1 at p.3, Adv.Doc. 24 at ¶4) (and not disputed by Plaintiff), inasmuch as in November 2020, CTS (the only grantee in the P17285 Grant Agreement) was sold to an unrelated entity that is not affiliated with BB&B, BB&B cannot (and no entity affiliated with BB&B can) assume any incentive payments and/or tax credits that would otherwise be due under the P17285 Grant Agreement, which was confirmed in a letter issued by NJEDA to BB&B on April 26, 2023. *See* Declaration of Susan Greitz in Support of NJEDA's Motion for Judgment on the Pleadings ("Greitz Decl.") (Adv.Doc. 24) at ¶4 and at Ex. 2 (Adv.Doc. 24-2). Indeed, in the Initial Complaint (Adv.Doc. 1), Plaintiff admits that "Christmas Tree Shops, Inc. was sold by BB&B on November 12, 2020 and is therefore not a debtor in the bankruptcy case." Adv.Doc. 1 at p.4, n.3. While the Proposed Amended Complaint (Adv.Doc. 41-1) no longer includes this admission contained in footnote 3 of the Initial Complaint, even the Proposed Amended Complaint admits CTS "*was formerly* a wholly owned subsidiary of BBB." Proposed Amended Complaint (Adv.Doc. 41-1) at ¶15 (emphasis added); *see also* Appellant's Br. at 7. Accordingly, Plaintiff has no standing to assert a claim on behalf of CTS with respect to the P17285 Grant Agreement. In any event, the provisions in the P17285 Grant Agreement are practically identical to the P17286 Grant Agreement. *Compare* Proposed Amended Complaint (Adv.Doc. 41-1) Exhibit A with Exhibit B. The only differences between these two agreements are: (a) the names of the Grantee, (b) the notice provision (Section 23E), (c) the signatories, and (d) the exhibits. *Compare* Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A with Ex. B. It also bears noting that, as indicated *infra*, there are cross-default provisions in all of the Grant Agreements, such that a default under any one of the agreements constitutes a default under the others.

(v) Buy Buy Baby Stores Inc., (vi) Harmon Stores Inc., and (vii) CTS (the "P36408 Grant Agreement").  The P36408 Grant Agreement is attached to the Proposed Amended Complaint (Adv.Doc. 41-1) at Exhibit C.  (The P17285 Grant Agreement, the P17286 Grant Agreement, and the P36408 Grant Agreements are collectively referred to as the "Grant Agreements.")

As set forth in the Grant Agreements, and pursuant to the Business Employment Incentive Program Act, N.J.S.A. 34:1B-120 *et seq.* (the "BEIP Act"), the State of New Jersey provides grants to the grantees under the conditions set forth in those agreements and pursuant to the BEIP Act.  Under these Grant Agreements and pursuant to the BEIP Act, in order to obtain benefits under the Grant Agreements, the grantees must satisfy detailed conditions in connection with fostering job creation in the State of New Jersey – both with respect to (a) maintaining a certain number of full-time existing employees and annually adding a minimum of additional full-time employees, and (b) timely submitting to NJEDA detailed reporting requirements in connection thereto.  *See* Proposed Amended Complaint (Adv.Doc. 41-1) at Exhibits A, B, C.

These conditions must be met for fifteen years (the "Commitment Duration" as defined in the Grant Agreements) beginning from the Eligibility Determination Date as defined therein.  *See* Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at p.3; Ex. B at p.3; Ex. C at p.2.  The Eligibility Determination Date for the P17286

5

Grant Agreement was October 18, 2009, and thus the Commitment Duration would end on October 18, 2024.  Plaintiff's Motion for Leave to File Amended Complaint (Adv.Doc. 41) at 18; *see also* Greitz Decl. (Adv.Doc. 24) at ¶8.  The Eligibility Determination Date for the P36408 Grant Agreement was November 15, 2011, and thus the Commitment Duration would end on November 15, 2026.  Plaintiff's Motion for Leave to File Amended Complaint (Adv.Doc. 41) at 18; *see also* Greitz Decl. (Adv.Doc. 24) at ¶9.  Plaintiff does not allege in his Proposed Amended Complaint that BB&B (and its affiliates) maintained the requisite number of jobs required under any of the Grant Agreements in 2021 or 2022.  *See* Proposed Amended Complaint (Adv.Doc. 41-1) at ¶27.

Section 3 of the Grant Agreements contains detailed annual reporting requirements of the grantees under those agreements.  *See* Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at §3; Ex. B at §3; Ex. C at §3.

Sections 4E and 4F of the Grant Agreements contain "Conditions to Grant" and "Conditions Subsequent," and state as follows:

E.      Conditions To Grant. **The obligation of Grantor to make the Grant Payment with respect to each and every Grant Year, and the right of Grantee to receive and retain same, shall be conditional upon satisfaction of each of the following conditions**:

1.  The Legislature has appropriated monies for the Grant with respect to such Grant Year or the Grantor has issued bonds pursuant to the Act;
2.  The State Treasurer has certified the amount of the Withholdings for such Grant Year, as required by Section 10 of the Act;

6

3. **No Events of Default have occurred and remain uncured,** unless all such defaults have been expressly waived by Grantor in writing, in its sole discretion;

4. Grantee has delivered to Grantor the Certification of Compliance; and,

5. No demand has been made by Grantor for recapture of any Grant Payment for any previous Grant Year.

F.      Conditions Subsequent. The entitlement of Grantee to retain any Grant Payment previously received by it hereunder with respect to each and every Grant Year shall be conditional upon the continuous compliance by it with the Minimum Eligibility Threshold made by Grantee during the remainder of the Commitment Duration, unless expressly waived in writing by Grantor.

Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at §4E-F; Ex. B at §4E-F; Ex.

C at §4E-F (emphasis added).

Section 6 of the Grant Agreements contains the following "Covenants of

Grantee" and states as follows:

6.      <u>Covenants of Grantee.</u>  Grantee covenants and agrees that:

A.      It shall meet and satisfy the Minimum Eligibility Threshold no later than the expiration of the Base Years and continue to satisfy the Minimum Eligibility Threshold at all times up to the expiration of the Commitment Duration;

B.      It shall maintain at least 80% of the Base Employment Number at all times up to the expiration of the Commitment Duration. The Grantor shall apply any job creation above the New Employment Commitment at the Project against any losses in the Base Employment Number when determining whether Grantee has fallen below 80 percent of the Base Employment Number.

C.      The Grantee shall maintain a net increase of employees at the Project at all times up to the expiration of the Commitment Duration. Any reductions in the employment level of the non-eligible employees that existed prior to approval of the Grant, must be deducted from the amount of New Employees in Eligible Positions for each year of the Grant Term.

D.      Grantee shall at all times during the Base Years and during the Commitment Duration satisfy all eligibility criteria under the Act and Regulations upon which Grantor relied in determining to make the Grant.

7

Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at §6A-D; Ex. B at §6A-D; Ex. C at §6A-D. Accordingly, a covenant of BB&B under the Grant Agreements was that the grantees under each agreement must "maintain at least 80% of the Base Employment Number at all times up to the expiration of the Commitment Duration." Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at §6B; Ex. B at §6B; Ex. C at §6B. The Base Employment Number for the P17286 Grant Agreement was 2,600, such that 80% of the Base Employment Number is 2,080. Greitz Decl. (Adv.Doc. 24) ¶10 and Ex. 4 (Adv.Doc. 24-4).[2] The Base Employment Number for the P36408 Grant Agreement was 2,440, such that 80% of the Base Employment Number is 1,952. Proposed Amended Complaint (Adv.Doc. 41-1) Ex. C at Exhibit A (within Ex. C); *see also* Proposed Amended Complaint (Adv.Doc. 41-1) ¶19 (discussing "creation of a minimum of 2,440 new jobs in New Jersey" for the P36408 Grant Agreement).

Notably, the P36408 Grant Agreement contains the following additional covenant in Section 6 of that Agreement:

---

[2]     While Exhibit A to the original December 4, 2006 P17286 Grant Agreement (Proposed Amended Complaint Ex. A) established the base employment number for this grant at 437, that number was later changed to 2,600 per the letter from BB&B to NJEDA that is attached at Exhibit 4 to the Greitz Declaration (Adv.Doc. 24-4). *See also* Proposed Amended Complaint (Adv.Doc. 41-1) ¶13 (discussing "creation of a minimum of 2,660 [sic] new jobs in New Jersey" for the P17286 Grant Agreement).

8

G.    It is specifically understood and agreed that this Grant is cross-defaulted with any existing assistance and any new assistance provided by the Authority to the Recipient and/or any of its subsidiaries.

Proposed Amended Complaint (Adv.Doc. 41-1) Ex. C at §6G.  Thus, under the cross-default provision in Section 6G of the P36408 Grant Agreement, any default under the P17286 Grant Agreement would constitute a default under the P36408 Grant Agreement.[3]

Section 14 of the P17286 Grant Agreement sets forth what constitutes an "Event of Default" under that agreement, including the following:

14. Default. Any one or more of the following shall constitute an event of default ("Event of Default") if the default is not cured within thirty (30) days after written notice of the default, provided, however, that said thirty (30) day period shall be extended an additional ninety (90) days if Grantee commences to cure the default within said thirty (30) day period and is diligently proceeding to cure the same.

A.    If the Minimum Eligibility Threshold[4] is maintained at none of the Project locations listed on Exhibit A for the Commitment Duration; provided that no Grant Payments shall be due or paid for any location that falls below the Minimum Eligibility Threshold requirement for that Project location;
B.    If Grantee fails to maintain 80% of the Base Employment Commitment;

---

[3]    There are numerous other cross-default provisions in the Grant Agreements. *See*, *e.g.*, Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at §14H; Ex. B at §14H; Ex. C at §14H, 14K; *see also* Greitz Decl. (Adv.Doc. 24) at ¶11.

[4]    The Minimum Eligibility Threshold referenced in Section 14A in all Grant Agreements is 25 full-time employees.  *See* Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at p.5 (definition of "Minimum Eligibility Threshold") and at Ex. A; Ex. B at p.5 (definition of "Minimum Eligibility Threshold") and at Ex. A; Ex. C at p.3 (definition of "Minimum Eligibility Threshold") and at Ex. A.

C.    If Grantee has breached or failed to perform any other covenant or promise under this Agreement, except in the event the Grantee fails to maintain the New Employment Commitment which shall be subject to the provisions of Section 4B;

. . .

F.    The failure of Grantee to timely submit the documents, materials, and information required to be submitted by this Agreement.

Proposed Amended Complaint (Adv.Doc. 41-1) Exhibit A at §14.

These Events of Default also appear in the P36408 Grant Agreement with one

exception.  Section 14B of the P36408 Grant Agreement states as follows:

B.    If the number of employees employed in New Jersey by Grantee and its affiliates excluding New Employees under the Grant falls below 80% of the Base Employment Number; provided that the Grantor shall apply any job creation at the Project above the New Employment Commitment, or at the request of the Grantee, the Minimum Eligibility Threshold, against any losses in the Base Employment Number when determining whether employment has fallen below 80% of the Base Employment Number; and provided further that no New Employees included in determining 80% of the Base Employment Number shall be included for payment under the Grant.

Proposed Amended Complaint (Adv.Doc. 41-1) Ex. C at §14B.

Section 15 of the Grant Agreements sets forth the "Remedies Upon Default"

and states in pertinent part as follows:

15.    Remedies Upon Default. **Upon the existence of any Event or Events of Default, the Grantor may, in its sole and absolute discretion, do any of the following, alone or in combination, after having first given Grantee notice and opportunity to cure the default in accordance with Paragraph 14 hereof**:

A.    For Events of Default pursuant to Sections 14(A) through 14(H):

. . . .

(3)   **withhold payment of all Grant payments not yet paid at the time of the default during such time as an Event or Events of Default remain uncured**;

(4)   terminate the agreement; and

(5)   take any other action legally available to it;

. . . .

Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at §15; Ex. B at §15; Ex.

C at §15 (emphasis added).

Section 15D of the Grant Agreements states as follows: "The Grantor's rights

under this Section 15 shall survive termination of the Agreement."   Proposed

Amended Complaint (Adv.Doc. 41-1) Ex. A at §15D; Ex. B at §15D; Ex. C at §15D.

Section 17 of the Grant Agreements states as follows:

17.   Forbearance Not a Waiver. No act of forbearance or failure to insist on the prompt performance by the Grantee of its obligations pursuant to this Agreement, either express or implied, shall be construed as a waiver by the Grantor of any of its rights hereunder. In the event that any provision of this Agreement should be breached by Grantee and the breach may thereafter be waived by Grantor, such waiver shall be limited to the particular breach waived by Grantor and shall not be deemed to waive any other breach.

Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at §17; Ex. B at §17; Ex.

C at §17.

Section 23H of the Grant Agreements states as follows:

H. Contractual Liability Act. The rights and remedies of the Grantee under this Agreement shall be subject to the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 et seq., the provisions of which are hereby incorporated herein by reference.

11

Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at §23H; Ex. B at §23H; Ex. C at §23H.

The Grant Agreements were each amended on or about June 9, 2016 (the "June 9, 2016 Amendments"), to reflect the fact that the grants that were to be awarded by NJEDA were being converted to a tax credit against the tax liability otherwise due pursuant to Section 5 of P.L. 1945 c. 162 (C.54:10A-5). The June 9, 2016 Amendments to the Grant Agreements are attached to the Proposed Amended Complaint (Adv.Doc. 41-1) at Exhibits D, E, and F.

On November 12, 2020, CTS was sold by BB&B. Initial Complaint (Adv.Doc. 1) at note 3; *see also* Proposed Amended Complaint (Adv.Doc. 41-1) at ¶15 (noting that CTS was "formerly a wholly owned subsidiary of BBB"). As such, BB&B cannot assume the P17285 Grant Agreement and cannot receive any tax credits that would otherwise be due thereunder. *See also* Greitz Decl. Exhibit 2 (Adv.Doc. 24-2); Proposed Amended Complaint (Adv.Doc. 41-1) Ex. B at §13 ("Grantee may not assign its interests in this Agreement to another company, other than those entities listed above as Grantee, without the prior written consent of Grantor.").

On or about February 6, 2023, the parties to the P36408 Grant Agreement entered into an amendment to the P36408 Grant Agreement. *See* Proposed Amended

12

Complaint (Adv.Doc. 41-1) at ¶¶44, 53; *see also* Greitz Decl. Ex. 7 (Adv.Doc. 24-7).[5]

On or about August 7, 2023, NJEDA issued two letters to BB&B, one with respect to the P17286 Grant Agreement and one with respect to the P36408 Grant Agreement (collectively, the "August 7, 2023 Letters"). The August 7, 2023 Letters are attached to the Proposed Amended Complaint (Adv.Doc.41-1) at Exhibit O.

As reflected in the August 7, 2023 Letters, pursuant to N.J.A.C. 19:31-10.6 (and pursuant to the P17286 Grant Agreement and the P36408 Grant Agreement as detailed above), based on the annual reports submitted by BB&B for 2021 and 2022, "the company fell below 80% of the base employment number and below the

---

[5]     On January 18, 2023, and on March 13, 2023, NJEDA issued to BB&B two default notices regarding missing required information in the 2021 Annual Report for the P17286 Grant Agreement submitted to NJEDA by BB&B in connection with BB&B's obligations under that agreement.  Greitz Decl. (Adv.Doc. 24) ¶14 and Ex. 8, 9.  On December 7, 2002, and on March 28, 2023, NJEDA issued to BB&B two default notices regarding missing information in the 2021 Annual Report for the P36408 Grant Agreement submitted to NJEDA by BB&B in connection with BB&B's obligations under that agreement.  Greitz Decl. (Adv.Doc. 24) ¶15 and Ex. 10, 11.  Following the issuance of these default notices NJEDA had discussions with BB&B and its representative from Deloitte regarding defaults in connection with the P17286 Grant Agreement and the P36408 Grant Agreement.  *See* Greitz Decl. (Adv.Doc. 24) ¶16.  On July 10, 2023, NJEDA informed BB&B in writing that based on the grantees' failure to reach the minimum number of employees pursuant to these agreements for multiple years, NJEDA would be issuing termination letters with respect to those agreements.  *Id.* Ex. 12.

13

minimum number of eligible positions." Proposed Amended Complaint (Adv.Doc. 41-1) Ex O at p.1.[6]

As set forth in the August 7, 2023 Letters, inasmuch as BB&B (and its affiliates) failed to maintain the requisite number of jobs for both 2021 and 2022 with respect to both the P17286 Grant Agreement and the P36408 Grant Agreement, NJEDA wrote that it was terminating both agreements effective immediately (*i.e.*, August 7, 2023) and that, as set forth in those agreements, NJEDA would withhold all accrued but unpaid liabilities, and that the parties will have no further obligations to each other under the Agreements. Proposed Amended Complaint (Adv.Doc. 41-1) Ex O at p.2.

After NJEDA issued the August 7, 2023 Letters, BB&B did not notify NJEDA in writing that it disputed the August 7, 2023 Letters, including the occurrence of the defaults and the statements therein that NJEDA would withhold all accrued but unpaid liabilities, and that the parties will have no further obligations to each other under the Agreements. Greitz Decl. (Adv.Doc. 24) ¶18. Indeed, the first *written statement* received by NJEDA from BB&B (or Plaintiff) of a situation or occurrence

---

[6] As indicated *supra*, 80% of the base employment number for the P17286 Grant Agreement is 2,080 and 80% of the base employment number for P36408 is 1,952. As also indicated *supra*, the minimum number of eligible positions for both the P17286 Grant Agreement and the P36408 Grant Agreement is twenty-five.

14

that may potentially result in the submission of a claim against NJEDA was the Initial Complaint filed herein by Plaintiff against NJEDA in June 2024. *Id.*[7]

The Proposed Amended Complaint (Adv.Doc. 41-1), like the Initial Complaint, asserts a claim for breach of contract under the Grant Agreements for NJEDA's alleged failure to fulfill its obligations thereunder. The Proposed Amended Complaint (Adv.Doc. 41-1), like the Initial Complaint (Adv.Doc. 1), also asserts a claim for turnover of property (pursuant to 11 U.S.C. §542) seeking the identical amount of damages as the breach of contract claim, alleging that NJEDA owes, and must turnover, this same amount to BB&B due to NJEDA's alleged breaches under the Grant Agreements.

---

[7]    To be sure, in his Proposed Amended Complaint (Adv.Doc. 41-1), Plaintiff alleges that the "BEIP Debtors made extensive efforts to have NJEDA pay the grants and award the tax credits for years 2011-2020," including sending letters to the "president of the New Jersey Senate and to then-Governor Chris Christie regarding NJEDA's failure to honor its commitments under the Agreements." Proposed Amended Complaint (Adv.Doc. 41-1) at ¶49. But Plaintiff does not claim that any *written* notice was ever sent *to NJEDA* of "any situation or occurrence which may potentially result in the submission of a claim" against the NJEDA. N.J.S.A. §59:13-5. Indeed, Plaintiff alleges that "[a]ttempts to obtain the certified, but not paid, tax credits began in earnest in early 2023." Proposed Amended Complaint (Adv.Doc. 41-1) at ¶51; *see also* Ojserkis Decl. (Adv.Doc. 41-2) at ¶¶2-8. Those attempts included an alleged "call" on February 6, 2023, a "meeting" on June 8, 2023, and conference calls on December 11, 2023, and February 29, 2024. Proposed Amended Complaint (Adv.Doc. 41-1) at ¶¶52, 54, 59, 60. While the exhibits to the Proposed Amended Complaint contain numerous letters and emails *from NJEDA*, the Proposed Amended Complaint does not attach or reference any written notice of claim *to NJEDA*.

In the Proposed Amended Complaint (Adv.Doc. 41-1), like the Initial Complaint (Adv.Doc. 1), Plaintiff does not allege that BB&B fulfilled its obligations under the Grant Agreements in 2021 and subsequent years but Plaintiff does allege that BB&B did meet its "job creation and other requirements of the [Grant] Agreements for years 2007 through at least 2020." Proposed Amended Complaint (Adv.Doc. 41-1) at ¶27; *see also* Initial Complaint (Adv.Doc. 1) at ¶24.

Plaintiff now appeals the denial of his motion for leave to file an amended complaint wherein he sought to recover what he contends is all the tax credits that BB&B is allegedly owed for 2020 and previous years, which, in Plaintiff's words, "were owed long before the year 2021" and "were overdue to be paid." Appellant's Br. at 32.

## 2.   **PROCEDURAL HISTORY**

On June 3, 2024, Plaintiff filed his Initial Complaint against NJEDA. *See* Initial Complaint (Adv.Doc. 1). On August 15, 2024, NJEDA filed its Answer (Adv.Doc. 19[8]) to Plaintiff's Initial Complaint.

On December 6, 2024, NJEDA filed a motion for judgment on the pleadings (Adv.Doc. 22, 24, 25).[9] On December 20, 2024, Plaintiff filed his opposition (Adv.Doc. 30) to NJEDA's motion for judgment on the pleadings, and on December

---

[8]     This document is not contained in Appellant's Appendix.

[9]     Adv.Doc. 25 is not contained in Appellant's Appendix.

31, 2024, NJEDA filed its reply (Adv.Doc. 31) in further support of its motion for judgment on the pleadings.

In its memoranda in support of its motion for judgment on the pleadings (Adv.Doc. 22-1, 31), NJEDA provided two reasons why its motion should be granted. First, NJEDA argued that pursuant to the NJCLA – which is explicitly incorporated by reference in the Grant Agreements – Plaintiff's claims are barred because BB&B never provided written notice, as required by the NJCLA, of the claims asserted herein before this action was commenced. Second, NJEDA argued that it is undisputed that for calendar years 2021 and 2022, BB&B did not employ the minimum number of people required under the Grant Agreements, and that under the terms of the Grant Agreements, due to this "Event of Default," NJEDA has the right to withhold any tax credits that would otherwise be due thereunder.

At the January 14, 2025 oral argument, the Court indicated that it accepted NJEDA's first argument for judgment on the pleadings (based on the NJCLA, which was incorporated by reference in the Grant Agreements) and granted the motion for judgment on the pleadings, albeit permitting Plaintiff – *who asked for the very first time at the January 14 2025 oral argument for* – an opportunity to file a motion for leave to file an amended complaint in an effort to cure the defect in the Initial Complaint. *See* January 14, 2025 Transcript of Oral Argument ("Jan. 14, 2025 Tr.") (Adv.Doc. 35) at p.23, lines 16-19; p.35, lines 2-6; p.41, line 1; p.45, lines 13-20.

17

At the January 14, 2025 oral argument, the Court also stated it was not persuaded by NJEDA's second argument that inasmuch as it is undisputed that for calendar years 2021 and 2022 BB&B did not employ the minimum number of people required under the Grant Agreements, an "Event of Default" under the terms of the Grant Agreements occurred.  Jan. 14, 2025 Tr. (Adv.Doc. 35) at p.42, lines 1-2.  The Court rejected this argument because under the terms of the Grant Agreements, no Event of Default could occur without NJEDA first providing at least thirty days beforehand a notice of such default, which NJEDA allegedly never did before it issued its August 7, 2023 letters to BB&B that stated NJEDA was terminating the Agreements as of that date due to BB&B's defaults thereunder.  Jan. 14, 2025 Tr. (Adv.Doc. 35) at p.24, lines 5-12; p.36, lines 13-15; p.41, lines 1-2.  But the Court permitted NJEDA to file a supplemental memorandum of law in an effort to further explain why it contends it was permitted under the Grant Agreements to withhold all tax credits not yet issued at the time of BB&B's default.  *Id.* at p.43, lines 16-18; p.45, lines 21-25.

On February 4, 2025, the Court issued an Order (Adv.Doc. 37) (the "February 4, 2025 Order") granting NJEDA's motion for judgment on the pleadings without prejudice to Plaintiff's right to file a motion for leave to file an amended Complaint. Pursuant to the February 4, 2025 Order, "[i]n an effort to streamline future briefing regarding a motion for leave to file an amended complaint," Plaintiff would file on

18

or before March 6, 2025, "a motion for leave to file an amended complaint with the proposed amended complaint and a supporting memorandum of law setting forth his position regarding why the Court should permit the filing of the amended complaint." February 4, 2025 Order (Adv.Doc. 37) at ¶3(I)(A). Accordingly, on March 6, 2025, Plaintiff filed a motion for leave to file an amended complaint (Adv.Doc. 41). The motion for leave to file an amended complaint attaches as Exhibit 1 to the motion the Proposed Amended Complaint and fifteen exhibits (A through O). *See* Adv.Doc. 41-1. The motion for leave to file an amended complaint also attaches as Exhibit 2 to the motion a Declaration of Benjamin Ojserkis in support of the motion (the "Ojserkis Decl."). Adv.Doc. 41-2.

In addition, pursuant to the February 4, 2025 Order, NJEDA would file on or before March 6, 2025 "a Memorandum of Law setting forth its position regarding why the August 7, 2023 termination letters it issued (which are attached as Exhibit D to the [Initial] Complaint) were effective 'to withhold payment of all Grant payments not yet paid at the time of the default during such time as an Event or Events of Default remain uncured' as set forth in Section 15 of the parties' grant agreements at issue in this Adversary Proceeding." February 4, 2025 Order (Adv.Doc. 37) at ¶3(I)(B). Thus, on March 6, 2025, NJEDA filed a Supplemental Memorandum of Law Regarding the August 7, 2023 Letters. Adv.Doc. 42.

<div align="center">19</div>

Following Plaintiff filing his memorandum of law in response to NJEDA's Supplemental Memorandum of Law Regarding the August 7, 2023 Letters (Adv.Doc. 46), the Bankruptcy Court entertained oral argument on Plaintiff's motion for leave to file an amended complaint on May 13, 2025. After extensive argument (Adv.Doc. 52), the Bankruptcy Court set forth its reasoning why it would deny Plaintiff's motion for leave to file an amended complaint and requested NJEDA to submit a proposed order denying the motion. Adv.Doc. 52 at 35-55.

On May 19, 2025, the Bankruptcy Court issued an order denying with prejudice Plaintiff's motion for leave to file an amended complaint and dismissing with prejudice Plaintiff's adversary proceeding against NJEDA. Adv.Doc. 51. On May 30, 2025, Plaintiff filed a Notice of Appeal of the Bankruptcy Court's May 19, 2025 Order. Adv.Doc. 56.

## SUMMARY OF ARGUMENT

NJEDA respectfully submits that there are multiple independent reasons why this Court should affirm the Bankruptcy Court's denial of Plaintiff's motion for leave to file an amended complaint.

**A.** Under the NJCLA, the provisions of which were incorporated by reference in the Grant Agreements, before bringing this action Plaintiff was obligated to first provide written notice of any situation or occurrence that may potentially result in the submission of a claim to NJEDA within three months of the

20

accrual of Plaintiff's claims.  Plaintiff admits that "the BEIP Debtors did not provide written notice to the NJEDA within 90 days of the accrual of their claims." Appellant's Br. at 16.  Accordingly Plaintiff's claims are defective as a matter of law.

Plaintiff's two attempts to avoid this fatal defect are unavailing.  Plaintiff first contends that the NJCLA is not applicable here because NJEDA has the authority to sue and be sued.  But Plaintiff has no answer to the fact that each of the Grant Agreements state that "[t]he rights and remedies of the Grantee [BB&B] under this Agreement shall be subject to the New Jersey Contractual Liability Act, N.J.S.A 59:13-1 et seq., the provisions of which are hereby incorporated herein by reference."  Adv.Doc. 41-1 Ex. A at §23H; Ex. B at §23H; Ex. C at §23H.  This provision in the Grant Agreements would be rendered a nullity if BB&B (or any representative of BB&B) was permitted to bring an action against NJEDA without first providing written notice to NJEDA within three months of the accrual of its claims.  Plaintiff then contends that by virtue of alleged telephone calls and alleged meetings his representatives had with NJEDA, there was "substantial compliance" with the dictates of the NJCLA.  But case law is crystal clear that there can be no substantial compliance with the NJCLA without *written* notice.

**B.**    As set forth above, under the NJCLA, the provisions of which were incorporated by reference in the Grant Agreements, before bringing this action Plaintiff must first provide written notice of any situation or occurrence which may

21

potentially result in the submission of a claim to NJEDA **within three months of the accrual of Plaintiff's claims**. Plaintiff admits that BB&B did not maintain in both 2021 and 2022 the minimum number of jobs required by the Grant Agreements, but Plaintiff claims that NJEDA breached its obligations by failing to issue tax credits **prior to** BB&B's defaults under the Grant Agreements, which, according to Plaintiff "were owed long before the year 2021" and "were overdue to be paid." Appellant's Br. at 32. Thus, even assuming *arguendo* that NJEDA breached its obligations under the Grant Agreements by not issuing tax credits to BB&B prior to BB&B's defaults thereunder, any action to recover such tax credits is barred by the NJCLA for the additional reason that BB&B (and Plaintiff) did not provide *any* notice (even oral notice) within three months of the accrual of such claims, as required by the NJCLA. The alleged (oral) notices Plaintiff asserts he or BB&B (or their representatives) provided in 2023 and 2024 before the filing of this action occurred *years after* the accrual of Plaintiff's claims for amounts purportedly "owed long before the year 2021," way past the NJCLA's three-month deadline.

      **C.** Plaintiff's claims are also barred by numerous express provisions of the Grant Agreements, including Sections 4, 14, and 15 of those Agreements, which provide that NJEDA may withhold all payments and tax credits if BB&B fails to employ the minimum number of people required under the Agreements. Plaintiff does not and cannot contest that BB&B did not employ the minimum number of

22

people required under the Grant Agreements in 2021 and 2022, a necessary condition to the receipt of any grant payments or issuance of any tax credits. Accordingly, NJEDA is under no obligation to now pay or issue any tax credits to Plaintiff, and NJEDA may withhold any payments or tax credits not previously issued.

Thus, for at least the above independent reasons, the Bankruptcy Court's determination – that the claims Plaintiff sought to assert against NJEDA in the Proposed Amended Complaint would be futile because such claims are defective as a matter of law – was correct and should be affirmed by this Court.

## ARGUMENT

Courts, including the U.S. Supreme Court, have held that futility of amendment as well as undue delay or prejudice are reasons that leave to amend should be denied. *See*, *e.g.*, *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *CBA Env't Servs. v. Toll Bros.*, 403 F. Supp.3d 403, 410 (D.N.J. 2019). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington*, 114 F.3d at 1434. "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

Plaintiff contends that the claims he seeks to assert in the Proposed Amended Complaint "would not be futile." Appellant's Br. at 17. But simply asserting it does

23

not make it so.  As demonstrated below, for multiple reasons, the claims Plaintiff seeks to bring would indeed be futile.

## I.   THE NEW JERSEY CONTRACTUAL LIABILITY ACT BARS PLAINTIFF'S CLAIMS.

### A. The NJCLA's Requirements Are Applicable To Plaintiff's Claims.

As set forth above, the Grant Agreements state that "[t]he rights and remedies of the Grantee under this Agreement shall be subject to the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 et seq., the provisions of which are hereby incorporated herein by reference."  Adv.Doc. 41-1 Ex. A at §23H; Ex. B at §23H; Ex. C at §23H.

Plaintiff argues that since NJEDA is statutorily authorized to sue and be sued it cannot seek the protections of the NJCLA.  Appellant's Br. at 17-21.  But Plaintiff has no answer to the fact that Section 23H of each of the Grant Agreements states that the grantee's "rights and remedies" under the Grant Agreements are subject to the NJCLA, the provisions of which are incorporated by reference in those agreements.  Thus, by signing the Grant Agreements, the parties thereto agreed that notwithstanding the fact that NJEDA is authorized to sue and be sued, the grantees in the Grant Agreements must abide by the mandates of the NJCLA, such that, pursuant to Section 5 of the NJCLA, before commencing a lawsuit, BB&B must first provide written notice to NJEDA of a situation or occurrence that may potentially result in the submission of a claim against NJEDA and that such written notice must be provided within three months of the accrual of such claims.

24

Indeed, if the grantees in the Grant Agreements are not required to first provide written notice to NJEDA before commencing suit then Section 23H of the Grant Agreements, which incorporates by reference the protections of the NJCLA, would be rendered a nullity. Contracts cannot be interpreted in a manner that would render a provision thereof to have absolutely no meaning whatsoever, which is what Plaintiff is advocating here. *See*, *e.g.*, *A.D.L. v. Cinnaminson Twp. Bd. of Educ.*, 975 F. Supp.2d 459, 466 (D.N.J. 2013) ("Under the basic precepts of contract construction, a document should not be interpreted to render one of its terms meaningless."); *Cumberland Cnty. Improvement Auth. v. GSP Recycling Co.*, 358 N.J. Super. 484, 497 (App. Div. 2003) ("[Contract] should not be interpreted to render one of its terms meaningless."); *Porreca v. City of Millville*, 419 N.J. Super. 212, 233 (App. Div. 2011) (same (citing *Cumberland*)).[10]

---

[10]     Plaintiff also argues that the Grant Agreements provide NJEDA with no more rights than which it has under the NJCLA as a whole and that under Section 2 of the NJCLA, NJEDA has no rights because it has the authority to sue and be sued. Appellant's Br. at 19-21. But this argument ignores numerous principles of contract interpretation that are contained in the very cases cited in Appellant's Brief, including (a) that "[t]he first interpretive principle … is that there is no surer way to misread any document than to read it literally" (*Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v. Lowenstein Sandler*, 365 N.J. Super. 241, 248 (App. Div. 2003) (internal quotations and citations omitted)); (b) contract should be read in a "common sense manner" (*C.L. v. Div. of Medical Assistance & Health Services*, 473 N.J. Super. 591, 599 (App. Div. 2022)); (c) "no provision" in a contract "should be rendered meaningless" (*Vegas United Inv. Series 105, Inc. v. Celtic Bank Corp.*, 135 Nev. 456, 459 (2019)); and (d) contract should not be interpreted in a manner that "would lead to an absurd result" (*JPC Merger Sub LLC v. Tricon Enters., Inc.*, 474 N.J. Super. 145, 161 (App. Div. 2022)).

In short, if, as Plaintiff maintains, there is no purpose or meaning to Section 23H of each Grant Agreement, why was this provision added?[11]  Plaintiff has no good answer to this question.

Plaintiff posits that "there are multiple reasons one could speculate why the NJEDA did intend to incorporate the [NJ]CLA as written even though the [NJ]CLA does not apply to claims against entities like the NJEDA that can sue and be sued." Appellant's Br. at 21.  But the only "speculation" offered by Plaintiff is that "including a provision in a contract drafted by a state agency could easily be a 'checklist' item that all state agencies add to contracts so that when the CLA does apply, it's in the contract." *Id.*  This is illogical and would subject every term in a contract with a state agency (or, indeed, with any entity that enters into many contracts) to be one that may have no effect whatsoever because, as explained by Plaintiff, perhaps such provision is meaningless in this particular contract.  Plaintiff's proffered explanation is irrational for the additional reason that it would lead to the bizarre result that the NJCLA would only be applicable in cases where there was no need for a provision incorporating the terms of the NJCLA, but that the NJCLA would not be applicable in cases such as this one where the parties specifically

---

[11]     Indeed, the court in *Stony Brook Constr. Co. v. Coll. of N.J.*, 2008 N.J Super. Unpub. LEXIS 799 (App. Div. June 16, 2008), relied on a similar provision included in a contract between the parties in that case to further support its holding that the NJCLA was applicable in that case.  *Id.* at *40.

included a provision that explicitly states that the "rights and remedies of the Grantee [BB&B] under this Agreement shall be subject to the [NJCLA]." This places the most basic rules of contract construction, including interpreting a contract in a common sense manner, on their head. *See*, *e.g.*, *Hardy ex. rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 103 (2009) (contracts are supposed to be interpreted in accord with "common sense"); *Cumberland Cnty. Improvement Auth. v. GSP Recycling Co.*, 358 N.J. Super. 484, 497 (App. Div. 2003) (same).

Plaintiff's second and last explanation why Section 23H is included in the Grant Agreements is that "the provision in the [Grant] Agreements providing that the [NJ]CLA applies to the Agreements actually clarifies that the [NJ]CLA does not apply, which would not have been as certain had it not been incorporated into the Agreements." Appellant's Br. at 21. This makes no sense. Plaintiff is essentially arguing that had there been no reference to the NJCLA in the Grant Agreements, the parties may have thought that BB&B's rights are subject to the NJCLA (notwithstanding the fact that NJEDA is statutorily authorized to sue and be sued), and that NJEDA (which allegedly drafted the Grant Agreements) inserted Section 23H to make it clear that since NJEDA is statutorily authorized to sue and be sued, BB&B's rights and remedies are *not l*imited by the NJCLA. It is simply devoid of logic to contend that the parties agreed to insert Section 23H of the Agreement in an effort to make clear that rights and remedies of BB&B are *not* limited by the

27

provisions of the NJCLA. If, indeed, the parties were in agreement that BB&B's

rights and remedies were not to be limited by the provisions of the NJCLA, Section

23H should not have been included in the Grant Agreements.

### B. Plaintiff and BB&B Failed to Provide Written Notice to NJEDA as Required by the NJCLA.

Section 5 of the NJCLA provides as follows:

"It shall be the responsibility of parties contracting with the State **to promptly notify the State in writing** of any situation or occurrence which may potentially result in the submission of a claim against the State. **Except as otherwise provided in section 6, no notice of claim for breach of contract, either express or implied in fact, shall be filed with the contracting agency later than 90 days after the accrual of such claim.** A notice of claim shall include the following information: the name of the claimant, the nature of the claim, specific reasons for making the claim, and the total dollar amount of the claim if known. After the expiration of 90 days from the date the notice of claim is received by the contracting agency, the claimant may file suit in a court of competent jurisdiction of the State of New Jersey.

**In all contract claims against the State, the claimant shall be forever barred from recovering against the State if:**

**a. he fails to notify the appropriate contracting agency within 90 days of accrual of his claim except as otherwise provided in section 6 hereof**; or …'

N.J.S.A. §59:13-5 (emphasis added).

Section 6 of the NJCLA provides as follows:

"A claimant who fails to file notice of his claim within 90 days as provided in section 6 of this chapter, may, in the discretion of a judge of the Superior Court of the State of New Jersey, be permitted to file such notice at any time **within 1 year after the accrual of his claim** provided that the State has not been substantially prejudiced thereby. Application to a judge of the

28

superior court for permission to file a late notice of claim shall be made upon motion based upon affidavits setting forth sufficient reason for the failure to file his notice of claim within the period of time prescribed by section 6 of this chapter.

N.J.S.A. §59:13-6 (emphasis added).

Section 2 of the NJCLA states "'[a]ccrual of claim' shall mean the date on which the claim arose and shall not be affected by the notice provisions contained herein." N.J.S.A. §59:13-2.

Here, despite the fact that the claim asserted by Plaintiff arose no later than September 6, 2023 – thirty days after the August 7, 2023 Letters notifying BB&B of its defaults were issued to BB&B – BB&B (and Plaintiff) never "notif[ied NJEDA] in writing of any situation or occurrence which may potentially result in the submission of a claim against [NJEDA]" within ninety days of September 6, 2023. N.J.S.A. §59:13-5. **Indeed, Plaintiff admits in his Brief to this Court that "the BEIP Debtors did not provide written notice to the NJEDA within 90 days of the accrual of their claims."** Appellant's Br. at 16.[12]  In fact, the first notification in writing by BB&B or Plaintiff of any situation or occurrence that may potentially result in the submission of a claim against NJEDA was the filing of this action in June 2024.   Inasmuch as three months passed since September 6, 2023 without a

---

[12]   This admission is unsurprising inasmuch as both the Initial Complaint and the Proposed Amended Complaint do not allege that BB&B or Plaintiff advised NJEDA in writing of any "situation or occurrence which may potentially result in the submission of a claim against" NJEDA.   N.J.S.A. §59:13-5.

written notice of claim being sent to NJEDA by BB&B or Plaintiff, Plaintiff's claims in the Proposed Amended Complaint are barred.  N.J.S.A. §59:13-5.[13]

Plaintiff argues that notwithstanding his failure to provide written notice, the "BEIP Debtors and Plan Administrator substantially complied with the notice provision of the [NJ]CLA through their constant communications and meeting with NJEDA."  Appellant's Br. at 22; *see also id.* at 22-29.  Plaintiff cites several cases in support of his contention that substantial compliance with the notice requirement is sufficient.  Plaintiff's argument that one can substantially comply with the notice requirement under the NJCLA without providing a written notice is without merit.

Indeed, *every* case cited by Plaintiff where a court held that substantial compliance was sufficient dealt with a *written* notice.  NJEDA is aware of no case – and Plaintiff does not supply any – holding that substantial compliance with the written notice requirement in the NJCLA can be accomplished without a written notice.

In addition, in *County of Hudson v. State Dep't of Corrections*, 208 N.J. 1 (2011), the New Jersey Supreme Court discusses the doctrine of substantial

---

[13]     Moreover, inasmuch as more than a year has elapsed since the latest possible accrual date of Plaintiff's claims, Plaintiff cannot now take advantage of the safe harbor provided in Section 6 of the NJCLA.  To be sure, Plaintiff filed his claim on June 3, 2024, within a year of September 6, 2023, but the statute and case law is clear that a claimant must provide notification of a potential claim *before* filing a claim in court.  N.J.S.A. §59:13-5; *County of Hudson v. State, Dep't of Corrections*, 208 N.J. 1, 23 (2011).

compliance in connection with the written notice requirement under the provisions of the NJCLA.  *Id.* at 21-22.  In doing so, the Court notes that in addressing the question of substantial compliance with respect to the NJCLA, "we deem it prudent to look to the manner in which similar arguments raised in the context of the corollary Tort Claims Act have been considered.  That more familiar statute has notice provisions which serve purposes like those that underlie the notice provision in the Contractual Liability Act."  *Id.* at 22.

Both the NJCLA as well as the New Jersey Tort Claims Act require a "written" notice of claim before a plaintiff can file a complaint.  N.J.S.A. §59:13-5; N.J.S.A. §59:8-5.  In connection with the Tort Claims Act, courts (including the New Jersey Supreme Court) have repeatedly held that one cannot achieve "substantial compliance" with the notice requirement if the notice was not provided in writing. For example, in *D.D. v. University of Med. and Dentistry of NJ*, 213 N.J. 130 (2013), the New Jersey Supreme Court held that the doctrine of "substantial compliance" cannot relieve a plaintiff of the written notice requirement and that the "doctrine of substantial compliance … has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies."  *Id.* at 159. The Court in *D.D.* explicitly stated that "there is no basis to extend the substantial compliance theory so as to relieve plaintiffs of their obligation to comply with the statute's requirement that they file a notice, and that it be in writing."  *Id.* at 159-160.

31

The Supreme Court in *D.D.* (*id.*) cited with approval the Appellate Division holding in *Velez v. City of Jersey City*, 358 N.J. Super. 224 (App. Div. 2003), that "it is elementary that at a very minimum, a notice of claim under the [Tort Claims] Act must be in writing" and that "[o]ral notice, even where it contains the elements required …, does not constitute substantial compliance." *Id.* at 238.

While Plaintiff alleges that BB&B's or Plaintiff's representatives had phone conversations with NJEDA in 2023 and 2024 regarding Plaintiff's contention that BB&B should receive tax credits, Plaintiff's failure to allege that NJEDA was provided written notice (and indeed his admission in his Brief that no written notice was provided (Appellant's Br. at 16)) dooms Plaintiff's claim under the NJCLA. Indeed, in *Dixon v. JPay, Inc.*, No. A-4498-19, 2022 N.J. Super. Unpub. LEXIS 806 (App. Div. May 13, 2022) (cited by Plaintiff at p.22 of his Brief), the court affirmed the trial court's dismissal of the plaintiff's contract claim because the "plaintiff failed to 'present his claims as required under the New Jersey [Contractual Liability Act]. Plaintiff has neither alleged or otherwise shown he filed any notice of contract claim as required.'" *Id.* at *9-*10. The court in *JPay* further held that although "Plaintiff maintains he did file a proper notice," he "fail[ed] to provide proof of any such notice or when it was filed." *Id.* at *10. As set forth above, while Plaintiff attaches numerous letters and emails to his Proposed Amended Complaint, none of them

32

constitute a notice of claim sent from BB&B or Plaintiff (or any of their representatives) to NJEDA.[14]

Accordingly, Plaintiff's motion for leave to file an amended complaint was correctly denied due to the futility of the proposed amendment for failure to provide written notice.

### C. Plaintiff Failed to Provide Any Notice Within Three Months of the Accrual of BB&B's Claims as Required by the NJCLA.

Putting aside Plaintiff's failure to provide written notice as required by the NJCLA, Plaintiff's claims are also defective because the alleged (oral) notice of claim that was provided in early 2023 and 2024 was untimely. As set forth above, Section 2 of the NJCLA states "'[a]ccrual of claim' shall mean the date on which the claim arose and shall not be affected by the notice provisions contained herein."

---

[14]    Notwithstanding Plaintiff's admission on page 16 of his Brief that "written notice to the NJEDA" was "not provide[d]," Plaintiff later writes in his Brief that there were "numerous written emails sent by the Plan Administrator's attorneys to the NJEDA in 2023 and early 2024." Appellant's Br. at 16, 28. To the extent, Plaintiff is backing away from his admission that no written notice was provided, his attempts to rely on alleged "numerous written emails" is unavailing. While the Proposed Amended Complaint alludes to a request for a meeting, there is no reference in the proposed pleading that there was a written notice to NJEDA of any situation or occurrence that may potentially result in the submission of a claim against NJEDA. Indeed, the Proposed Amended Complaint does not reference any emails or other written communications sent to NJEDA. *See* Proposed Amended Complaint (Adv.Doc. 41-1) at ¶¶48-62 (paragraphs alleging "BEIP Debtor's Efforts to Obtain the Tax Credits"). There is no dispute that, as was the case in *Dixon v. JPay, Inc.*, No. A-4498-19, 2022 N.J. Super. Unpub. LEXIS 806 (App. Div. May 13, 2022), although "Plaintiff maintains he did file a proper notice," he "fail[ed] to provide proof of any such notice or when it was filed." *Id.* at *10.

N.J.S.A. §59:13-2.  *According to Plaintiff*, while NJEDA may have had a right to withhold issuance of tax credits for years 2021 and beyond due to BB&B's failure to maintain the required number of employees in 2021 and 2022, NJEDA breached its obligation to issue tax credits for many years before 2021.  *See*, *e.g.*, Appellant's Br. at 32 ("BEIP Debtors met all of the requirements of the Agreements through at least the end of calendar year 2020 and are therefore entitled to the credits that they were promised for those years ... .  The amount for those years *were owed long before the year 2021 [and] were overdue to be paid*." (emphasis added)).  But even assuming *arguendo* that NJEDA breached its obligations to issue tax credits in one or more years before 2021, Plaintiff cannot now assert a claim for such alleged breaches if BB&B did not issue a notice of claim to NJEDA with respect to such alleged breaches within three months of their accrual.

As the court stated in *County of Hudson v. Dep't of Corrections*, No. A-3511-05T2, 2007 N.J. Super. Unpub. LEXIS 913 (App. Div. June 28, 2007), "[a] new claim accrues every time the State does not pay the correct amount."  *Id.* at *6.  Thus, according to the allegations in the Proposed Amended Complaint and pursuant to the requirements of the NJCLA, BB&B should have filed a notice of claim under the NJCLA within three months of each time NJEDA allegedly failed to deliver tax credits that it was allegedly obligated to deliver "long before the year 2021" (Appellant's Br. at 32).  But Plaintiff does not allege that any notice of claim – written

34

or oral – was issued within three months (or a year) of these alleged breaches to issue tax credits.

Accordingly, Plaintiff's motion for leave to file an amended complaint was correctly denied due to the futility of the proposed amendment for failure to provide any notice within three months of the accrual Plaintiff's claims.[15]

---

[15] Plaintiff posits a peculiar argument in his final paragraph of the section of his Brief dealing with alleged "substantial compliance" with the requirements of the NJCLA. Plaintiff writes:

> "[T]here is no prejudice to NJEDA in allowing the Plan Administrator's amended complaint [because] NJEDA has been on notice of the claim for unpaid tax credits since at least early 2023. However, if the Court affirms the Bankruptcy Court's denial of the Plan Administrator's motion to amend complaint, the BEIP Debtors would be irrevocably prejudiced because it would prohibit the BEIP Debtors from recovering up to an estimated $19 million in tax credits or refunds."

Appellant's Br. at 29. This argument lacks merit for at least two reasons. First and foremost, it does not the address the fact that the Proposed Amended Complaint is fatally flawed due to the failure to provide a timely written notice to NJEDA and therefore the motion to amend was properly denied on futility grounds. Second, Plaintiff appears to argue that in measuring "prejudice" to the parties one has to take into account that if a plaintiff's motion to amend is denied its amended claims would be dismissed with prejudice. If that was true, a court could never deny with prejudice a motion to amend a complaint. That is not and cannot be the law.

## II. UNDER THE TERMS OF THE GRANT AGREEMENTS, DUE TO BB&B'S FAILURE TO MAINTAIN SUFFICIENT JOBS IN 2021 AND 2022, NJEDA MAY WITHHOLD PAYMENT OR TAX CREDITS THAT WERE NOT YET PAID OR ISSUED.

Plaintiff does not and cannot dispute the fact that BB&B failed to employ the minimum number of people under the Grant Agreements for calendar years 2021 and 2022, and that under the terms of the Grant Agreements – under Section 4E(3) and Section 15A(3) – when there is an "Event of Default," NJEDA has the right to withhold payments not yet paid (or tax credits not yet issued) at the time of such default during such time an Event of Default remains uncured.  Yet, Plaintiff argues that notwithstanding these undisputed facts, its motion to amend the complaint should not have been denied either because (a) NJEDA (allegedly) breached the Grant Agreements before any default by BB&B in 2021 and 2022 (Appellant's Br. at 31-39), or (b) NJEDA never provided a written notice of default before it terminated the Grant Agreements on August 7, 2023 (*id.* at 40-45).  Both arguments are without merit.

### A. NJEDA's Alleged Breach Of The Grant Agreements Before 2021 Has No Effect On The Fact That The Grant Agreements Expressly State That A Condition of BB&B Receiving and Retaining Any Payment Is That No Events of Default Have Occurred and Remain Uncured and that NJEDA May Withhold Payment Of All Grant Payments Not Yet Paid At The Time Of Default During Such Time As An Event Or Events Of Default Remain Uncured.

Plaintiff first contends that notwithstanding BB&B's default in 2021 and 2022, NJEDA cannot exercise its rights under the Grant Agreements to withhold

36

payments not yet paid or tax credits not yet issued due to NJEDA's alleged failure to pay Grant payments or issue tax credits before 2021.  Appellant's Br. at 31-39. Specifically, Plaintiff asserts that "under New Jersey law, a party cannot claim that the other party breached a contract unless the party was, itself, in compliance with the contract."  Appellant's Br. at 31.  In support of this proposition, Plaintiff cites *City of Trenton v. Cannon Cochran Mgmt. Servs., Inc.*, No. A-5576-09T1, 2022 WL 3241579, at \*4 (N.J. Super. Ct. App. Div. Aug. 1, 2011).  *Id.*  Plaintiff's argument is without merit and his reliance on *Trenton* is misplaced.

Indeed, *Trenton* supports NJEDA's position.  *Trenton* states the unremarkable proposition that a party asserting a claim for breach of contract must be in compliance with its obligations under the contract.  In this action, NJEDA is not asserting a claim; Plaintiff is – for breach of contract (and for turnover based on the alleged breach of contract).  Accordingly, as the court stated in *Trenton*, a party such as Plaintiff cannot assert a claim on behalf of BB&B under the Grant Agreements if BB&B did not fulfill its obligations thereunder.[16]

---

[16]     For similar reasons, Plaintiff's repeated mantra that "NJEDA cannot now use its own breach of the Agreements to its advantage" (Appellant's Br. at 36) is inapposite.  *See also* Appellant's Br. at 32 ("NJEDA is essentially saying that because it breached the Agreements … it can now take advantage of that breach. … The NJEDA should not be allowed to use its own prior breach of the Agreements to penalize the BEIP Debtors."); *id.* at 37 ("NJEDA cannot now use the BEIP Debtors' breach of the Agreements in 2021 to excuse its own prior breaches of the Agreement.").  NJEDA, the defendant here, is not using any alleged breach to its advantage.  Rather, the Plan Administrator, as plaintiff here, cannot seek damages

Moreover, Plaintiff is ignoring the fact that under both Sections 4(E)(3) and 15(A)(3) of the Grant Agreements BB&B cannot collect (or retain) any Grant Payment (or tax credit) if an Event of Default has occurred and remains uncured and that NJEDA may withhold payment (or tax credits) when an Event of Default has occurred and remains uncured.  In light of the fact that Events of Default – BB&B's admitted failure to maintain the minimum number of jobs required under the Grant Agreements in 2021 and 2022 – have occurred and such Events of Default cannot be cured in 2023 or thereafter, Plaintiff's claims under the Grant Agreements fail as a matter of law.[17]

---

for breach of contract (or turnover based on breach of contract) when BB&B failed to fulfill its obligations under the Grant Agreements.  Moreover, as set forth above, BB&B's right to payments is explicitly conditioned upon actions by BB&B that BB&B failed to take, such as employing the minimum number of people required under the Grant Agreements throughout the Commitment Duration.

[17]    Accordingly, Plaintiff's reliance on *S&R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371 (3d Cir. 1992); *Weisman v. New Jersey Dep't of Hum. Servs.*, 982 F. Supp.2d 386 (D.N.J. 2013), *aff'd*, 593 F. App'x 147 (3d Cir. 2014); and Restatement (Second) of Contracts §237 (1981) is misplaced.  Appellant's Br. at 37.  None allow a plaintiff to recover under a contract by alleging the defendant breached the contract if the contract specifically conditions any recovery under the contract on the plaintiff fulfilling all of its obligations thereunder.  Indeed, the only statement in *S&R* that is applicable to our case is that "[u]nder no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits."  *S&R*, 968 F.2d at 376 (emphasis in original).  This is what Plaintiff is seeking to do here.  Moreover, as stated in comment d to Section 237 the Restatement (Second) of Contracts, if "the agreement makes full performance a condition, substantial performance is not sufficient and if relief is to be had under the contract, it must be through excuse of the non-occurrence of the condition to avoid forfeiture."  Here, under Section 4E(3) of the Grant Agreements, BB&B's ability to receive Grant Agreement payments and/or tax credits is conditioned upon it maintaining the

**B.     Plaintiff's Argument That NJEDA Cannot Terminate the Grant Agreements Because It Purportedly Failed To First Provide A Notice Of Default Is Both Irrelevant and Without Merit.**

The final section of Plaintiff's Brief (pp.40-45) is titled "NJEDA Cannot Terminate the Agreements Because It Did Not Provide Notice to the BEIP Debtors." Appellant's Br. at 40.  This statement is both irrelevant and without merit.

Plaintiff's argument is irrelevant because whether NJEDA properly terminated the Grant Agreements under Section 15A(4) on August 7, 2023, when it issued to BB&B the two August 7, 2023 Letters has no bearing on the fact that under Sections 4E(3) and 15A(3) of the Grant Agreements Plaintiff has no right to receive anything and NJEDA is allowed to withhold all Grant Agreement payments or tax credits when there is an Event of Default that remains uncured.  The relevant questions are whether an "Event of Default" has occurred and whether such Event or Events of Default remain uncured.

Plaintiff argues, based on the first sentence in both Sections 14 and 15 of the Grant Agreements that "[b]ecause the NJEDA did not provide written notice to the BEIP Debtors of any default in the required number of jobs in 2021 and 2022, it cannot exercise the remedies provided in paragraph 15 of the Grant Agreements,

---

minimum number of people employed throughout the Commitment Duration, and Section 15A(3) of the Grant Agreements specifically permits NJEDA to withhold all payments when an Event of Default (as occurred here) remains uncured (as is the case here).

39

including termination of the Agreements and withholding of payment of all grant payments not yet paid." Appellant's Br. at 41.[18]  Plaintiff is wrong for numerous reasons.

### 1.    The August 7, 2023 Letters Constitute Notice of Default.

First, there is no dispute that, at a minimum, the August 7, 2023 Letters constitute written notice of default to BB&B due to BB&B's failure to maintain the required number of employees under the Grant Agreements for both 2021 and 2022. Indeed, Plaintiff's Brief admits that through the August 7, 2023 Letters, "NJEDA provided written notice of the BEIP Debtors' default under the Agreements for failing to maintain the minimum number of jobs for years 2021-2022." Appellant's Br. at 11.[19]  Accordingly, even if a notice of default was required before NJEDA was

---

[18]    Plaintiff's views on the clarity of the language in Sections 14 and 15 of the Grant Agreements appear fluid.  He first posits several times that the language is "clear and unambiguous." Appellant's Br. at 40-42. NJEDA agrees. Plaintiff then argues that ambiguities should be resolved against NJEDA as the alleged drafter of the Agreement. Appellant's Br. at 44.  Inasmuch as all parties agree that the language is clear, there is no need to resolve any ambiguities.  In addition, as set forth by the court in *Chubb Custom Ins. v. Prudential Ins.*, 195 N.J. 231 (2008), "[w]here a word or phrase is ambiguous, a court generally will adopt the meaning that is most favorable to the non-drafting party *if the contract was the result of negotiations between parties of unequal bargaining power*." *Chubb*, 195 N.J. at 238 (emphasis added).  It is more than a "stretch" to suggest that when BB&B, a Fortune 500 company, entered into the Grant Agreements it had unequal bargaining power.

[19]    Plaintiff ignores the July 10, 2023 email communication from NJEDA to Anthony Szymelewicz, who was representing BB&B with regard to discussions with NJEDA concerning BB&B's defaults under the Grant Agreements, informing BB&B of its defaults thereunder for not employing the minimum number of people required for multiple years.  *See* Greitz Decl. Ex. 12 (Adv.Doc. 24-12).

40

permitted to exercise the remedies set forth in Section 15 of the Grant Agreements, no later than September 6, 2023 – thirty days after issuance of the August 7, 2023 Letters – an "Event of Default" occurred.  Thus, no later than September 6, 2023, under Section 15A(3) of the Grant Agreements, NJEDA was permitted to "withhold payment of all Grant payments not yet paid at the time of the default during such time as an Event or Events of Default remain uncured."  Similarly, no later than September 6, 2023, under Section 4E(3) of the Grant Agreements, BB&B forfeited its "right … to receive and retain" any "Grant Payment with respect to each and every Grant Year" because an "Event[] of Default ha[s] occurred and remain[s] uncured."  There is no (and there can be no) dispute that the Events of Default remain uncured as it impossible to cure in 2023 (or thereafter) the failure to maintain the required number of jobs in 2021 and 2022.  Indeed, Plaintiff admits in his Brief that "NJEDA may be correct that the failure to maintain a certain number of jobs in a particular year cannot be cured in the following year."  Appellant's Br. at 43.[20]

---

[20]     NJEDA's termination of the Grant Agreements is irrelevant as a matter of law. Whether NJEDA's termination was effective (a) on August 7, 2023, (b) thirty days later – on September 6, 2023 (*see*, *e.g.*, *Harry's Village, Inc. v. Egg Harbor Twp.*, 89 N.J. 576, 587 (1982) (when notice letter provides an effective date that is earlier than permissible, the effectiveness of letter will take hold when first permissible)), or (c) not at any time, NJEDA is still fully within its rights to withhold all tax credits under Sections 4E(3) and 15A(3) of the Grant Agreements as of September 6, 2023.

## 2. Due to the Incurable Nature of BB&B's Default, NJEDA Was Not Obligated to Provide a Notice of Default.

Putting aside all of the fatal flaws discussed *supra*, including the fact that the August 7, 2023 Letters constitute written notice of default, Plaintiff's claims are legally deficient for yet another independent reason. Plaintiff's claims are based on the faulty premise that NJEDA was contractually obligated to first provide a written notice of default before an "Event of Default" can be established. But case law – in and outside New Jersey – makes clear that a duty to provide a notice of default before termination is unnecessary, even when the non-breaching party has a contractual duty to provide such notice, if the default cannot be cured.

For example, in *Young Travelers Day Camps, Inc. v. Felsen*, 118 N.J. Super. 304 (D. Ct. 1972), the licensor terminated a license agreement without first providing five days written notice as required under the parties' contract. The court held that notice was unnecessary to terminate the contract notwithstanding the contractual provision mandating a five-day notice. *Id.* at 314-15. The court explained that the purpose of the notice was to provide the licensee the ability to cure the default, but inasmuch as the breach in that case was "irreparable" and "irremediable," no such notice was required.[21] *Id.*

---

[21] The court in *Young Travelers* also held that the licensee's breach was material, but the court made clear that the reason it dispensed with the notice requirement was the fact that "[t]he breach was not merely material, it was irreparable." 118 N.J. Super. at 314.

42

Similarly, the court in *Twin Crest Grp. v. Del. Valley Urology, LLC*, No. 10-6350, 2013 U.S. Dist. LEXIS 175036 (D.N.J. Dec. 12, 2013), denied a motion for summary judgment that was premised on a party's failure to first provide notice of a default under a contract despite a contractual provision requiring such notice first be provided before a suit for damages could be instituted.  One reason given by the court for denying the motion was that there was a factual question regarding whether such notice would have been futile because the breach was arguably "irreparable." *Id.* at *30.  The *Twin Crest* court was clear that if notice would have been futile because the breach was indeed incurable, no such notice would be required, notwithstanding a contractual provision requiring such notice.[22]

---

[22]  To be sure, *Twin Crest* provided additional reasons for its denial of summary judgment, including the fact that it was unclear whether the contract required notice before the non-breaching party could sue for damages and whether a material breach excused the non-breaching party from first providing notice.  *Twin Crest*, 2013 U.S. Dist. LEXIS 175036, at *20-*25.  But the court made clear that independent of those reasons, one need not fulfill a contractual requirement to provide notice of default if such notice would have been futile due to the fact that such default was incurable. *Id.* at *28-*31.  Accordingly, while NJEDA respectfully submits that BB&B's failure to employ the minimum people required under the Grant Agreements in both 2021 and 2022 was a "material" breach as employing the minimum number of people required tends to "defeat the purpose" of the Grant Agreements (*id.* at *24), that analysis is unnecessary here because *Twin Crest* (and the same is true with respect to *Young Travelers*) makes clear that even if a breach was not material, if it was incurable, no notice of default would be necessary even if a contractual provision required such notice.

On page 12 of Plaintiff's Response to NJEDA's Supplemental Memorandum (Adv.Doc. 46) Plaintiff contends that both *Young Travelers* and *Twin Crest* "are not binding precedent" and do not "apply" here.  With regard to *Young Travelers*, Plaintiff asserts that the court there follows the "minority" (*id.* at 12) view on notice,

43

Courts in other states, including, for example, New York and Pennsylvania, also hold that one need not comply with contractual provisions requiring notice of default when such defaults cannot be cured. *See*, *e.g., East Empire Constr. Inc. v. Borough Constr. Grp. LLC*, 156 N.Y.S.3d 148, 152 (App. Div. 2021) ("notice to cure is not required where the breach is impossible to cure"); *Sea Tow Servs. Int'l v. Pontin*, 607 F. Supp.2d 378, 388 (E.D.N.Y. 2009) ("the Court finds, as a matter of law, that if the breach was incurable, plaintiff was under no obligation to adhere to the ten-day cure provision"); *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 564-65 (2009) ("in the event of an incurable breach, the non-breaching party

---

but Plaintiff misreads the case. First, putting aside that the court in *Young Travelers* recognizes New Jersey has not posited its view yet on this issue, the debate there was whether you could terminate without notice when the contract permits terminating only with notice. Notwithstanding the fact that NJEDA does not need to have terminated the agreements altogether to defend itself from Plaintiff's action to recover funds under the agreements, even if the terminations needed to be valid as of August 7, 2023, *Young Travelers* is clear that if the purpose of the notice was to give the counter party a chance to cure, it need not be given when the breach cannot be rectified, which is the case here. As stated in *Young Travelers*, acceptance of "the majority view would constitute a mechanical adherence to a rule of law without consideration of basic underlying rules of contract construction." 118 N.J. Super. at 313. The court went on to say that it was clear from the contract that the idea of giving notice to the defendant there, the franchisee – Felson, "was that it gave him a right to cure a default." *Id.* at 314. Here too, when a notice of default is mentioned – Sections 14 and 15 of the Grant Agreements – it discusses in the very same line the opportunity to cure. In *Twin Crest*, all Plaintiff can say is that it is a federal case and there were alternative reasons given by the court for its holding that notice need not be provided. But NJEDA acknowledges these facts, and the fact remains that that case states that when the breach is incurable no notice need be given notwithstanding a provision in the relevant contract requiring notice.

44

may immediately terminate the agreement without following its notice and cure provisions").

As stated above, Plaintiff does not and cannot contend that BB&B's default of not employing the minimum number of people required in 2021 and 2022 under the Grant Agreements was curable.  Indeed, Plaintiff admits in his Brief that "NJEDA may be correct that the failure to maintain a certain number of jobs in a particular year cannot be cured in the following year."  Appellant's Br. at 43.  Accordingly, NJEDA was under no obligation to first provide BB&B with a notice of default before terminating the parties' Grant Agreements and withholding all payments that would otherwise be due thereunder.[23]

Finally, even assuming *arguendo* that NJEDA breached the Grant Agreements by not first providing a written notice of breach to BB&B, there are no damages

---

[23]      NJEDA respectfully submits that there is an additional reason why it was under no obligation to provide notice of default before terminating the Grant Agreements and withholding payments that would otherwise be due – namely that the obligation to provide notice of default under the Grant Agreements is explicitly tied to providing BB&B with an opportunity to cure such defaults.  *See* Proposed Amended Complaint (Adv.Doc. 41-1) Ex. A at §§14, 15; Ex. B at §§14, 15; Ex. C at §§14, 15.  Accordingly, based on general canons of contract interpretation, including that contracts should not necessarily be read "literally" but with "common sense" to effectuate the clear purposes of the contract, notice of incurable breaches need not be provided under the Grant Agreements. *See*, *e.g.*, *Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 103 (2009) ("A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner."); *Borough of Princeton v. Board of Chosen Freeholders of Cnty. of Mercer*, 333 N.J. Super. 310, 325 (App. Div. 2000) ("Literalism must give way to context.").

45

resulting from that breach, as determined by the Bankruptcy Court, because BB&B could not have cured in 2023 (or thereafter) its failure in 2021 and 2022 to maintain the minimum number of jobs required under the Grant Agreements.[24]

## CONCLUSION

For all the foregoing reasons, the Bankruptcy Court's denial of Plaintiff's motion for leave to file an amended complaint should be affirmed.

<table>
<tr><td></td><td><strong>McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP</strong></td></tr>
<tr><td>Dated: August 25, 2025</td><td><em>/s/ Jeffrey Bernstein</em></td></tr>
</table>

Jeffrey Bernstein, Esq.
Eliott Berman, Esq. (admitted *pro hac vice*)
570 Broad Street, Suite 1401
Newark, NJ 07102
Telephone: (973) 565-2183
Facsimile: (973) 622-5314
E-mail: jbernstein@mdmc-law.com
          eberman@mdmc-law.com
*Counsel to New Jersey Economic Development Authority*

---

[24] Plaintiff argues that because his adversary proceeding has now been dismissed with prejudice, there are damages due to NJEDA's alleged failure to provide a written notice of default to BB&B before terminating the Grant Agreements (or before NJEDA was permitted to exercise all of its rights under Sections 4E and 15A of the Grant Agreements). Appellant's Br. at 42-45. But Plaintiff fails to distinguish between damage to BB&B in general and what a plaintiff must show to recover on a claim for breach of contract. As set forth by a case cited by Plaintiff – *Federico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) – to "state a claim for breach of contract" a plaintiff must show "damages flowing" from the alleged breach. Here, there are no damages "flowing" from the alleged breach by NJEDA to provide BB&B with a thirty-day period to cure its breach of not employing the minimum number of people required in 2021 and 2022, because BB&B could not cure such breach.

46

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. Bank. P. 8015(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 12,982 words.

2. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 Times New Roman font.

/s/ Jeffrey Bernstein                         Date: August 25, 2025
Jeffrey Bernstein