**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>20230930-DK-BUTTERFLY-1, INC., f/k/a BED BATH & BEYOND INC., et al.,<br><br>Debtors. | **On Appeal From:**<br>Bankr. Case No. 23-13359 (VFP)<br><br>Adv. Pro. No. 24-01443 (VFP) |
| MICHAEL GOLDBERG, as Plan Administrator for 20230930-DK-BUTTERFLY-1, INC., f/k/a Bed Bath & Beyond Inc.,<br><br>Plaintiff/Appellant,<br><br>v.<br><br>NEW JERSEY ECONOMIC DEVELOPMENT AUTHORITY,<br><br>Defendant/Appellee. | Case No. 2:25-cv-06676 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is an appeal filed by Appellant Michael Goldberg, as Plan Administrator for 20230930-DK-BUTTERFLY-1, INC., f/k/a Bed Bath & Beyond Inc., ("Appellant" or "Plan Administrator") from the Bankruptcy Court's May 19, 2025 Order ("May Order") denying Appellant's March 6, 2025 Motion for Leave to File an Amended Complaint. (ECF. No. 1.) Having reviewed and considered the parties' submissions filed in connection with this appeal and having declined to hear oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause having been shown, the appeal is **DENIED**.

## I. BACKGROUND[1]

On June 3, 2024, the Plan Administrator filed an adversary complaint against the New Jersey Economic Development Authority ("NJEDA") for its repeated breach of the relevant Agreements and for turnover of the tax credits. (ECF No. 9-1 at 3–13.) On August 15, 2024, the NJEDA filed its answer and affirmative defenses. (Adv. Doc. No. 19.)[2] On December 6, 2024, NJEDA filed a motion for judgment on the pleadings arguing that the New Jersey Contractual Liability Act ("CLA"), N.J. Stat. Ann. § 59:13-1, *et. seq*., barred the Plan Administrator's complaint because the Plan Administrator failed to provide notice of his claim to the NJEDA within 90 days of the accrual of his claim, and that the BEIP Debtors[3] forfeited all unpaid tax credits due to their failure to maintain the required number of jobs in New Jersey in 2021 and 2022. (ECF No. 9-1 at 106–32.) In response, the Plan Administrator argued that the CLA did not apply to the NJEDA and that NJEDA could not terminate the Agreements because they failed to provide written notice to the BEIP Debtors of their default pursuant to the terms of the Agreements. (ECF No. 9-2 at 3–19.)

---

[1] The Court writes for the parties and assumes familiarity of the facts. Accordingly, in the interest of judicial economy, the Court includes only the facts and procedural background relevant to the appeal.

[2] When citing to documents filed in the adversary proceeding that are contained in Appellant's Appendix on appeal, the Court cites to the district court docket ECF number. For exceptions, such as this one where the document was not filed in the appellate docket, the Court cites directly to the adversary proceeding docket.

[3] Bed Bath & Beyond, Inc. ("BBB") and the Debtors formerly known as Bed Bath & Beyond of California LLC (now known as 20230930Butterfly-36), LLC, Liberty Procurement Company (formerly known as Bed Bath & Beyond Procurement Co.), BBB Value Services, Inc., now known as 20230930Butterfly-35, Inc., Buy Buy Baby Stores, Inc., Harmon Stores, Inc., and Christmas Tree Shops, Inc.

On January 14, 2025, the Bankruptcy Court held that the CLA applied to the Agreements and granted NJEDA's motion for judgment on the pleadings without prejudice to the Plan Administrator's right to file a motion to amend the complaint. (ECF No. 9-2 at 40–93.) Moreover, because there was no allegation in the complaint that the BEIP Debtors complied with the CLA by providing notice to the NJEDA before filing the complaint, the complaint was dismissed. (*Id.*) The Bankruptcy Court's order also required the NJEDA to submit additional briefing as to why the Termination Letters allowed the NJEDA to withhold all unpaid tax credits from the BEIP Debtors. (ECF No. 9-2 at 40–88.) The court, however, left open the issue of whether the NJEDA had properly terminated the Agreements since it had failed to provide notice of default and an opportunity to cure to the BEIP Debtors prior to issuing the Termination Letters. (ECF No. 9-2 at 62–63; 90–93.)

On March 6, 2025, the Plan Administrator filed his motion for leave to amend the complaint, and the NJEDA filed its supplemental memorandum regarding the sufficiency of the Termination Letters. (ECF No. 9-3 at 3–236.) On May 13, 2025, a hearing was held on the Plan Administrator's motion. (ECF No. 9-4 at 21–76.) The Plan Administrator argued that the BEIP Debtors had substantially complied with the CLA through their years of contact with the NJEDA regarding the unpaid tax credits, and particularly, through the several meetings held with top NJEDA officials in the year prior to the filing of the complaint, and because NJEDA was on actual notice of the BEIP Debtors' claims. (ECF No. 9-3 at 13–17.) The Plan Administrator also argued that amending the complaint would not be futile because, had the NJEDA complied with the terms of the Agreements, the BEIP Debtors should have already been paid a majority of the tax credits

prior to their alleged default beginning in 2021 for failing to maintain the required number of jobs. (ECF No. 9-3 at 18–21.)

The Bankruptcy Court denied the Plan Administrator's motion to amend the complaint and held that the BEIP Debtors did not substantially comply with the CLA because it did not give the NJEDA written notice of the claims against it, as required by the CLA, despite the NJEDA being on actual notice. (ECF No. 9-4 at 59, 65.) In short, the Court held that the terms of the grant agreements were clear and unambiguous on this requirement. (*Id.* at 72–73.) As to NJEDA's alleged breach, the court noted that even if the NJEDA had provided notice of the default to the BEIP Debtors and gave them an opportunity to cure before issuing the Termination Letters, (1) the BEIP Debtors could not have cured their prior failure to maintain the required number of jobs in 2021 and 2022, and (2) the NJEDA had a right to withhold payments pursuant to the parties' agreement. (*Id.* at 68–70.) The court recognized that the NJEDA would essentially be benefitting from their own breach, but found that "the plain language of this provision is really unambiguous and grants the NJEDA the discretion to withhold all payments not yet paid upon the occurrence of an event of default." (*Id.* at 71–72.) Therefore, the court found that amendment would be futile because the Plan Administrator could not sufficiently plead breach of contract by the NJEDA. (*Id.* at 74.) The Bankruptcy Court entered its order denying the Plan Administrator's motion to amend complaint with prejudice on May 19, 2025. (ECF No. 9-4 at 18–19.) The Plan Administrator timely filed his notice of appeal to this Court. (ECF No. 9-4 at 77–83.)

## II. JURISDICTION AND LEGAL STANDARD

This Court has jurisdiction to review the Bankruptcy Court's May Order. District courts possess jurisdiction over appeals "from final judgments, orders, and decrees" of bankruptcy courts.

28 U.S.C. § 158(a)(1). An order denying a motion to amend a complaint is a final order for purposes of 28 U.S.C. § 158(a). *See Curran v. Curran*, 554 B.R. 272, 278 (B.A.P. 1st Cir. 2016).

Where a district court has jurisdiction over a bankruptcy appeal, "[t]he proper standard of review to be applied by a district court . . . is determined by the nature of the issues presented on appeal." *In re Beers*, Civ. A. No. 09-1666, 2009 WL 4282270, *3 (D.N.J. Nov. 30, 2009), *aff'd*, 399 F. App'x 748 (3d Cir. 2010) (quoting *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 321 B.R. 147, 157 (D.N.J. 2005)). A district court reviews "the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof." *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (quoting *Interface Group-Nevada v. TWA (In re TWA)*, 145 F.3d 124, 130–31 (3d Cir. 1998)).

For the first issue, the Court reviews an order denying a motion to amend a complaint for an abuse of discretion. *See Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000); *Mid-American Salt, LLC v. Morris County Cooperative Pricing Council*, 964 F.3d 218, 230 (3d Cir. 2020); *see also Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 127 (5th Cir. 2019) (concluding that it was an abuse of discretion for the district court to deny creditors leave to amend). For the remaining issues, the bankruptcy court's interpretation of a statute is a legal conclusion and is reviewed *de novo*. *See Michael J. Wright Const. Co. v. Kara Homes, Inc.*, 396 B.R. 131, 135 (D.N.J. 2008). Furthermore, the interpretation of "unambiguous contractual language" is also reviewed *de novo*. *See Adler v. Gruma Corp.*, 135 F.4th 55, 64 (3d Cir. 2025).

## III. DECISION

Appellants contend the Bankruptcy Judge "committed reversible error by denying the Plan Administrator's motion to amend the complaint." (ECF No. 9 at 28.) More specifically, Appellant argues "the amendment would not be futile," and that not freely granting amendment constitutes

reversible error. (*Id.*) Appellee counters that "the claims Plaintiff seeks to bring would indeed be futile," and therefore denial of the motion to amend was correct and should be affirmed. (ECF No. 13 at 29–30.) Because the question of futility[4] inherently requires the Court to address Appellant's other arguments, the Court addresses those issues before turning to futility and reversible error.

**A. The Bankruptcy Court Did Not Err in Holding That the New Jersey Contractual Liability Act Applied to the Agreements**

Appellant asserts the Bankruptcy Court incorrectly held that (1) "the provisions of the CLA apply to the Agreements" and (2) "the Plan Administrator's claims are barred because he failed to give written notice of his claims to the NJEDA within 90 days of the accrual of his claims." (ECF No. 9 at 17.) Specifically, Appellant argues that while the CLA would normally not apply to the NJEDA (as an agency of the State which is statutory authorized to sue and be sued), the terms of the Agreement state otherwise by expressly incorporating the provision of the CLA. (*Id.* at 18 (citing N.J. Stat. Ann. §§ 34:1B-5, 59:13-2); *see* ECF No. 9-1 at 41, 60, 170 ("The rights and remedies of Grantee under this Agreement shall be subject to the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 *et. seq*., the provisions of which are hereby incorporated herein by reference.").) As such, Appellant contends that all the provisions of the CLA must be incorporated, including the provision that excludes agencies that can sue and be sued. (ECF No. 9 at 18.) In other words, Appellant circularly argues that by incorporating the CLA in the agreement, the CLA's exclusion of the NJEDA applies, and therefore the CLA is inapplicable.

Appellant argues that the NJEDA cannot "cherry pick" which provisions of the CLA are incorporated into the agreement and that by specifically incorporating the CLA into the

[4] In *Foman v. Davis*, the Supreme Court held "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith . . . [or] futility of amendment . . . the leave sought should, as the rules require, be 'freely given.'" 371 U.S. 178, 182 (1962). Because the parties' arguments focus on futility, so does the Court's opinion.

Agreements, all provisions of the CLA must govern. (*Id.* at 30.) Appellant asserts, "when a contract expressly incorporates a statutory enactment by reference, that enactment becomes part of the contract for the indicated purposes just as though the words of that enactment were set out in full in the contract." (ECF No. 9 at 19 (citing 11 Williston on Contracts § 30:19 (4th ed. 2024); *Vegas United Inv. Series 105, Inc. v. Celtic Bank Corp.*, 135 Nev. 456, 459, 453 P.3d 1229, 1232 (Nev. 2019) (explaining that when a contract incorporates a statutory provision by reference, that statutory language is interpreted as though set out in the contract in full)).)

Appellant further contends the NJEDA could have incorporated only a portion of the CLA if they had so desired while drafting the contract, noting that "[i]t is well established that parties who are not subject to a statute may choose to use parts of the statute to define their relationship without bringing the full force of the statute to bear." (ECF No. 9 at 31 (citing *Craddock Int'l Inc. v. W.K.P. Wilson & Son, Inc.*, 116 F.3d 1095, 1107–08 (5th Cir. 1997)).) Appellant emphasizes that "parties in New Jersey are . . . presumed to have contracted with reference to the existing law." (ECF No. 9 at 20 (citing *Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v. Lowenstein Sandler, P.C.*, 839 A.2d 52, 56 (N.J. Super. App. Div. 2003)).) As such, Appellant asserts that "the language incorporating the CLA into the Agreements is clear and unambiguous and must be enforced as written," and "the more relevant rule of contract construction is that if the terms of a contract 'are clear and unambiguous, there is no room for construction and the court must enforce those terms as written.'" (ECF No. 9 at 31–32 (citing *C.L. v. Div. of Med. Assistance & Health Servs.*, A.3d 860, 865 (N.J. Super. App. Div. 2022)).) Finally, Appellant disputes the Bankruptcy Judge's conclusion that the CLA must apply to the Agreements because, if it did not, its incorporation would be "meaningless." (ECF No. 9 at 32; *see* ECF No. 9-4 at 24–25 ("It doesn't

make sense to me that they would incorporate it by reference, so it would not be incorporated by reference.").)

Appellee, citing to extensive authority, disputes Appellant's circular argument about the CLA, and argues that "[c]ontracts cannot be interpreted in a manner that would render a provision thereof to have absolutely no meaning whatsoever." (ECF No. 13 at 31 (citing *A.D.L. v. Cinnaminson Twp. Bd. of Educ.*, 975 F. Supp. 2d 459, 466 (D.N.J. 2013); *Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., Inc.*, 818 A.2d 431 (N.J. Super. App. Div. 2003); *Porreca v. City of Millville*, 16 A.3d 1057 (N.J. Super. App. Div. 2011)).)

Having reviewed this issue *de novo*, the Court agrees with the Bankruptcy Court that to interpret the agreement to render the CLA's incorporation meaningless does not follow the common sense understanding of contract interpretation. *See, e.g., Hardy ex. rel. Dowdell v. Abdul-Matin*, 965 A.2d 1165, 1169 (N.J. 2009) ("A basic principle of contract interpretation is to read the document as a whole in a fair and common sense manner.").

Here, the Court finds the commonsense interpretation is that the CLA was included in the Agreements to govern "[t]he rights and remedies of Grantee under this Agreement." (ECF No. 9-1 at 170.) A while there is a lack of binding authority on this issue, the New Jersey precedent that contracts provisions should not be interpreted to be meaningless is compelling. *See, e.g.*, *A.D.L. v. Cinnaminson Twp. Bd. of Educ.*, 975 F. Supp. 2d 459, 466 (D.N.J. 2013); *Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., Inc.*, 818 A.2d 431 (N.J. Super. App. Div. 2003) (concluding that the court should be guided "by basic precepts of contract construction" including that a contract should not be "interpreted to render one of its terms meaningless"); *Porreca v. City of Millville*, 16 A.3d 1057 (N.J. Super. App. Div. 2011) (noting that a contract should not be interpreted to render one of its terms meaningless).

Accordingly, based on fundamental principles of contract interpretation, this Court finds the most reasonable and commonsense interpretation is that the CLA serves as a purposeful and functioning incorporation into the Agreement. Therefore, the Bankruptcy Court did not err in holding that the CLA applied to the agreements.

### B. The Bankruptcy Court Did Not Commit Reversible Error in Holding that the Plan Administrator Did Not Substantially Comply With the CLA

Appellant alternatively asserts that if the CLA does govern the Agreements, then the Plan Administrator "substantially complied with the notice provision of the CLA through their constant communications and meetings with NJEDA throughout 2023 and into 2024." (ECF No. 9 at 33.) Appellant maintains that the goal of the notice requirement prior to a lawsuit being filed "is to give the agency an opportunity to investigate the merits of the claim" and to "provide a sufficient period of time within which the appropriate State agency and the Attorney General may take administrative action to adjust the dispute." (*Id.* at 33–34.)

While the Court appreciates Appellant's position, ultimately it is not persuaded. The Appellant is unable to provide any case law to support that non-written notice, of the sort the Appellant contends it gave the Appellee, was found sufficient to satisfy the CLA's express written notice requirement.[5] Section 5 of the CLA provides as follows with regards to written notice:

> It shall be the responsibility of parties contracting with the State to promptly notify the State **in writing** of any situation or occurrence which may potentially result in the submission of a claim against the State. . . . **A notice of claim shall include the following information: the name of the claimant, the nature of the claim, specific reasons for making the claim, and the total dollar amount of the claim if known** . . . .

(ECF No. 13 at 34 (emphasis added).)

[5] The Appellant also disputes the timeliness of the notice under Sections 5 and 6 of the CLA, but because the written nature of the notice is dispositive, it is not necessary to address timing.

Appellant contends that, when taken together, the combination of the emails it sent to Appellee together with the actual notice of the above CLA requirements given to Appellee in numerous meetings and telephone calls are sufficient. In support, Appellant cites to *Cnty. of Hudson v. State, Dep't of Corr.*, No. A-3511-05T2, 2007 WL 1836883 (N.J. Super. Ct. App. Div. June 28, 2007), and *Eze v. Rowan Univ.*, No. A-2659-07T2, 2009 WL 232181 (N.J. Super. Ct. App. Div. Feb. 3, 2009), to demonstrate that less formal notice has been accepted to meet the CLA notice requirement. (*See* ECF No. 9 at 23–25.) The reliance is misplaced.

In *Cnty. of Hudson v. State, Dep't of Corr.*, the court held "[w]e reject DOC's contention that the letter was inadequate because it did not include an express reference to the potential for 'submission of a claim' or state that its purpose was to give notice pursuant to the CLA. The statute lists the express requirements, and this letter meets them." 2007 WL 1836883, at *3. Here, Appellant fails to assert that its written emails contained all of the express requirements set out by the CLA. Indeed, nowhere does Appellant make this claim. Similarly, in *Eze*, the notice was provided in multiple *written* letters and complaints, and while the Court did not go into their exact contents, the Court was satisfied that these written documents met the notice requirement. *SeeEze v. Rowan Univ.*, 2009 WL 232181 (N.J. Super. Ct. App. Div. Feb. 3, 2009). While Appellant contends the written requirement was satisfied by emails, the Court finds the actual notice came substantively from phone calls and meetings. (ECF No. 9 at 26–28.)

Therefore, neither of these cases support a conclusion that Appellant's actions satisfied the notice requirement of the CLA. While Appellant contends the purpose of the notice requirement for state agencies was met through numerous communications, this Court finds such communication insufficient to overcome the four specific requirements of the CLA. The

Bankruptcy Court was correct in finding that Appellant did not meet the notice requirement of the CLA.

### C. The Bankruptcy Court Did Not Commit Reversible Error and Did Not Erroneously Hold That Filing the Amended Complaint Would Be Futile

The Bankruptcy Court did not commit reversible error and was not erroneous in holding that amending the Complaint would be futile. The court properly found: (1) the CLA applied to the agreements (*see supra* Section III(A)), and (2) the Plan Administrator and BEIP Debtors failed to comply with the CLA by not giving the NJEDA written notice of the claims against it (*see supra* Section III(B)). Because the Plan Administrator and BEIP Debtors did not comply with the CLA, the Bankruptcy Court found amendment would be futile because there is no amendment the Plan Administrator can make to sufficiently allege breach of contract by the NJEDA. While amendment should be freely given, *see Foman*, 371 U.S. at 182, the record on appeal does not support a finding that denying the motion to amend based on futility is an abuse of discretion.[6]

## III. Conclusion

For the reasons set forth above, Appellant's appeal from the Bankruptcy Judge's May Order, which denied Appellant's Motion for Leave to File an Amended Complaint, is **DENIED**. An appropriate order follows.

Dated: September 30, 2026

***/s/ Brian R. Martinotti***
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

[6] The Court acknowledges Appellant's arguments that "[t]he NJEDA should not be allowed to use its own prior breach of the Agreements to penalize the BEIP Debtors" and that the NJEDA did not provide notice of default or an opportunity to cure. However, the Court agrees with the Bankruptcy Court that the agreements, no matter how unfavorable they are to the BEIP Debtors, are clear and unambiguous regarding the BEIP Debtors' requirement to comply with the CLA's written notice requirement. Therefore, whether either party breached or defaulted under the Agreements is not pertinent to the futility of amending the complaint for breach of contract. Based on this finding, it is not an abuse of discretion to find amendment would be futile.